# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X
                                                 :
SOFTWARE FREEDOM                                 :
CONSERVANCY, INC. and ERIK                       :
ANDERSEN,                                        :
                                                 :
                    Plaintiffs,                  :
                                                 :
          - against -                            :
                                                 :
BEST BUY CO., INC., SAMSUNG                       :
ELECTRONICS AMERICA, INC.,                        :
WESTINGHOUSE DIGITAL                              :     OPINION AND ORDER
ELECTRONICS, LLC, JVC                            :
AMERICAS CORPORATION,                            :
WESTERN DIGITAL                                  :     09 Civ. 10155 (SAS)
TECHNOLOGIES, INC., ROBERT                       :
BOSCH, LLC, PHOEBE MICRO, INC.,                  :
HUMAX USA INC., COMTREND                         :
CORPORATION, DOBBS-STANFORD                      :
CORPORATION, VERSA                               :
TECHNOLOGY INC., ZYXEL                           :
COMMUNICATIONS INC., ASTAK                       :
 INC., and GCI TECHNOLOGIES                      :
CORPORATION,                                     :
                    Defendants.                  :
------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.     INTRODUCTION

          On December 14, 2009, the Software Freedom Conservancy, Inc. and

Erik Andersen (together, "Plaintiffs") brought this action against fourteen

1

commercial electronics distributors (collectively, "Defendants") for copyright infringement.[1] After answering the Complaint and making initial disclosures, Defendant Westinghouse Digital Electronics, LLC ("WDE") ceased complying with its discovery obligations.[2] On April 2, 2010, WDE executed a general assignment for the benefit of creditors.[3] On June 3, 2010, Plaintiffs moved for a default judgment, or, in the alternative, summary judgment against WDE.[4] The Court granted Plaintiffs' motion for a default judgment.[5] Plaintiffs now contend that Credit Management Association ("CMA") and Westinghouse Digital LLC ("WD") are WDE's successors in interest, and move to join them as defendants pursuant to Rule 25(c) of the Federal Rules of Civil Procedure.[6] For the reasons discussed herein, Plaintiffs' motion is denied in part and stayed in part.

## II.    BACKGROUND

---

[1]     *See* Complaint ("Compl.") ¶ 1.

[2]     *See Software Freedom Conservancy, Inc. v. Best Buy Co., Inc.*, No. 09 Civ. 10155, 2010 WL 2985320, at *1 (S.D.N.Y. July 27, 2010).

[3]     *See* 8/9/10 Plaintiffs' Memorandum of Law in Support of Its Motion to Join Successors in Interest of Defendant Westinghouse Digital Electronics, LLC ("Pl. Mem.") at 3.

[4]     *See id.* at 2-3.

[5]     *See id.*

[6]     *See id.*

In 1999, Andersen developed software and contributed it to BusyBox, an open source computer program.[7] In October 2008, Andersen registered a copyright in the code he contributed to BusyBox version 0.60.3, which was first published in 2002.[8] According to Plaintiffs, defendant Westinghouse Digital Electronics, LLC ("WDE") distributed Plaintiffs' copyrighted BusyBox software — without Plaintiffs' permission[9] — within its High Definition Television ("HDTV") products, as well as through software for use with those HDTVs.[10]

WDE was wholly owned by Nexis, Inc., a California corporation.[11] Nexis, Inc. was wholly owned by Nexis Holdings LLC, which in turn was forty-nine percent owned by Richard Houng ("Houng").[12] No party provided any evidence regarding the remaining fifty-one percent ownership. WDE sold electronics under the WESTINGHOUSE brand name pursuant to a license granted

---

[7]     *See* 6/1/10 Declaration of Erik Andersen ("Andersen Decl.") ¶ 3.

[8]     *See id.* ¶ 4.

[9]     *See* Compl. ¶¶ 26-27.

[10]    *See id.*

[11]    *See* 9/20/10 Respondent Westinghouse Digital, LLC's Memorandum in Opposition to Plaintiffs' Motion for Joinder ("WD Opp. Mem.") at 3.

[12]    *See id.*

3

by Westinghouse Electric Corporation.[13]

On April 2, 2010, WDE executed an assignment for the benefit of creditors (the "Assignment") under California law in favor of Credit Managers Association of California doing business as Credit Management Association ("CMA").[14] WDE then changed its name and is currently still active and doing business as Mora Electronics LLC ("Mora").[15] CMA is a California non-profit corporation with its principal place of business in California.[16] It assists insolvent companies with work-outs or liquidations through alternatives to bankruptcy, including the general assignment for the benefit of creditors — a business liquidation device under California law.[17]

Pursuant to its obligations under California law, CMA assumed all

---

[13]     *See id.* at 3-4.

[14]     *See* Pl. Mem. at 2-3. An assignment for the benefit of creditors is a device under state law by which an insolvent company may liquidate without filing for federal bankruptcy. *See Credit Mgrs. Ass. of S. Cal. v. National Indep. Bus. Alliance*, 162 Cal. App. 3d 1166, 1169 (Cal. Ct. App. 1984). "The assignment is an assignment of all of the [assignor's] assets that are transferable and not exempt from enforcement of a money judgment." Cal. Code Civ. Proc. § 493.010. "The assignment is for the benefit of all the [assignor's] creditors." *Id.*

[15]     *See* WD Opp. Mem. at 4.

[16]     *See* 9/20/10 Respondent Credit Managers Association of California's Memorandum in Opposition to Plaintiffs' Motion for Joiner ("CMA Opp. Mem.") at 4.

[17]     *See id.*

4

decision-making for WDE and commenced liquidating its assets.[18] It sold many of WDE's assets — including the alleged infringing HDTVs and web servers containing Plaintiffs' BusyBox software (the "Infringing Assets") and the Westinghouse licenses — to Golden Star Electronics n/k/a Westinghouse Digital LLC ("WD") (the "Asset Sale").[19] WD paid five hundred thousand dollars in cash, agreed to pay a percentage of future royalties up to one and a half million dollars and assumed approximately eighteen million dollars of WDE's liabilities.[20] This lawsuit was not a liability assumed by WD.[21] The WESTINGHOUSE brand licenses were among the purchased assets.[22] Other assets that WD purchased include "all tangible and intangible personal property assets . . . used in the operation of the [b]usiness," "customer lists, vendor lists, licensing and trademark rights to the name 'Westinghouse Digital Electronics,'" rights in telephone numbers and world wide web domain names, and "all rights . . . necessary or

---

[18]    *See* WD Opp. Mem. at 6.

[19]    *See id.*

[20]    *See* Pl. Mem at 2-3.

[21]    *See* April 2010 Asset Purchase Agreement Between Golden Star Electronics, LLC and Credit Management Association ("Purchase Agreement"), Ex. C to WD Opp. Mem, at Schedule 2.3.

[22]    *See* WD Opp. Mem. at 6.

5

desirable in connection with the operation of the [b]usiness."[23]

WD is a Delaware limited liability company located in Orange, California.[24] It is wholly owned by Northwood Partners Limited, and is managed by WD Manager LLC, which in turn is managed by Eric Chen.[25] Neither Nexis Inc. nor Houng have reported an ownership interest in Northwood Partners Limited, and WD maintains that Chen is not involved with Nexis Inc. or WDE.[26] WD's listed address is 500 N. State College Blvd., Suite 1300, Orange, California 92868 — the former address of WDE — and its in-house counsel is Arthur Moore — WDE's former in-house counsel.[27]

CMA notified WDE's known creditors of the Assignment and Asset Sale in a creditor bulletin.[28] Plaintiffs received a copy of this bulletin.[29] The bulletin showed that WDE had assets worth one million six hundred thousand

---

[23]     Purchase Agreement at 4-6.

[24]     *See* 9/20/10 Declaration of Arthur Moore ("Moore Decl."), Counsel for Respondent WD, ¶¶ 9-10.

[25]     *See id.* ¶¶ 7-8.

[26]     *See id.*

[27]     *See* Declaration of Daniel Ravicher ("Ravicher Decl."), Counsel for Plaintiffs, ¶¶ 3-5.

[28]     *See* CMA Opp. Mem. at 5.

[29]     *See* Ravicher Decl. ¶ 2.

6

dollars and liabilities of approximately forty-two million dollars at the time of the Assignment.[30] WDE's creditors were provided a proof of claim form with the bulletin and were required to submit their claims to CMA by September 27, 2010 (the "Bar Date"), to receive distributions from WDE's estate.[31]

On August 2, 2010, WD brought an action in the Superior Court of California, Orange County, against various defendants — including Plaintiffs here — seeking to quiet title to the assets it acquired from CMA, and a declaratory judgment that WD is not WDE's successor in interest.[32] That case is currently pending in California.[33]

Plaintiffs now seek to join WD and CMA as defendants with WDE under Rule 25(c) on the ground that they are WDE's successors in interest pursuant to California law.[34] Plaintiffs also contend that because CMA sold the Infringing Assets to WD, and because WD continues the copyright infringing activities of

---

[30]     *See* CMA Opp. Mem. at 5.

[31]     *See id.* Plaintiffs failed to file a proof of claim before the Bar Date. *See id.*

[32]     *See* 8/2/10 Verified Complaint to Quiet Title in Personal Property and Declaratory Relief filed by Westinghouse Digital LLC, Ex. C to WD Opp. Mem.

[33]     *See* WD Opp. Mem. at 19.

[34]     *See* Pl. Mem. at 3.

WDE, they should be joined as WDE's successors in interest in this action.[35]

Lastly, Plaintiffs assert that because the Assignment operated to frustrate federal

copyright law, California state law is preempted and WD and CMA are WDE's

successors in interest under federal law.[36]

## III.   APPLICABLE LAW

### A.   Rule 25(c)

Rule 25(c) of the Federal Rules of Civil Procedure provides that "[i]f

an interest is transferred, the action may be continued by or against the original

party unless the court, on motion, orders the transferee to be substituted in the

action or joined with the original party."[37] "[G]ranting substitution of one party in

litigation for another under Rule 25(c) is a discretionary matter for the trial

court."[38] "The primary consideration in deciding a motion pursuant to Rule 25(c) is

whether substitution will expedite and simplify the action."[39] The rule's purpose is

---

[35]     *See* 10/4/10 Plaintiffs' Reply Memorandum of Law in Support of
Their Motion for Joinder ("Pl. Reply Mem.") at 6.

[36]     *See id.* at 7.

[37]     Fed. R. Civ. Pro. 25(c).

[38]     *In re Chalasani*, 92 F.3d 1300, 1312 (2d Cir. 1996).

[39]     *Advanced Marketing Grp., Inc. v. Business Payment Systems, Inc.*,
No. 05 Civ. 9121, 2010 WL 3291588, at *4 (S.D.N.Y. Aug. 16, 2010) (quotations
and citations omitted).

"to allow an action to continue unabated when an interest in a lawsuit changes hands, without initiating an entirely new suit."[40] "If a transferee is joined or substituted as a plaintiff or defendant, it is not because its substantive rights are in question, but rather because it has come to own the property in issue."[41] "A successor in interest is bound by a judgment against its predecessor even if substitution is not effected."[42] "The merits of the case and the disposition of the property are still determined with respect to the original parties."[43] Moreover, a "court gains personal jurisdiction over [a successor] simply as a consequence of [its] status as a successor in interest."[44] "Personal jurisdiction is not created by Rule 25 . . . but exists because successors in interest . . . [are] bound by the judgment" regardless of their joinder.[45] "Although substitution usually is effected during the course of litigation, substitution is appropriate even after final judgment or on

---

[40]     *Moore's Federal Practice* § 25.30.

[41]     *Id.* § 25.32.

[42]     *Koehler v. Bank of Bermuda Ltd.*, No. M18-302, 2002 WL 1766444, at *2 (S.D.N.Y. July 31, 2002) (quotations and citations omitted).

[43]     *Id.*

[44]     *Libutti v. United States*, 178 F.3d 114, 124 (2d Cir. 1999).

[45]     *Moore's Federal Practice* § 25.33[2].

9

appeal if the transfer of interest took place after the case was filed."[46]

It would be an abuse of discretion for a court to allow a "substitution in the absence of a transfer in interest."[47] Before granting a motion for substitution, a court must determine "that a party is, in fact, a successor-in-interest."[48] "Successor liability is a question of [s]tate law."[49] Most often,

> a successor in interest may be a person or entity who acquired the particular interest at stake in the litigation, such as a certain piece of property or a contractual right, or who acquires all of the assets and liabilities of a party to the litigation. For example, assignees of a patent may be considered 'successors in interest' in an infringement action. A purchaser of real property may succeed to the prior owner's interest in litigation involving pollution on the property.[50]

Rule 25(c) "does not specify a method for deciding the motion or a standard to use in determining whether a motion may be decided on the papers."[51]

---

[46]     *Id.* § 25.31[3]. *Accord Arnold Graphics Indus., Inc. v. Independent Agent Ctr.*, 775 F.2d 38 (2d Cir. 1985) (substituting a party as a successor in interest under *de facto* merger doctrine after awarding judgment against original party).

[47]     *Chalasani,* 92 F.3d at 1312.

[48]     *Levin v. Raynor*, No. 03 Civ. 4697, 2010 WL 2106037, at *2 (S.D.N.Y. May 25, 2010).

[49]     *Libutti*, 178 F.3d at 124.

[50]     *Koehler*, 2002 WL 1766444, at *3.

[51]     *Moore's Federal Practice* § 25.35[3].

10

This is because "the rule does not easily lend itself to contested motions practice."[52] "[I]t permits automatic continuation of a lawsuit against an original corporate party, although the outcome will bind the successor corporation, unless the court believes the transferee's presence would facilitate the conduct of the litigation."[53] "[I]n a context . . . in which a decision on a Rule 25(c) motion effectively imposes liability, the court first must determine whether the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to joinder or substitution as a matter of law."[54] "If the affidavits show this, the court should grant the motion; if they do not, the court should conduct an evidentiary hearing to decide whether the motion should be granted."[55]

**B.     Successor in Interest**

"'[A]s a general rule where a corporation sells or otherwise transfers all of its assets, its transferee is not liable for the debts and liabilities of the transferor."[56] "The rule of nonliability is especially applicable where the vendor

---

[52]     *Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 72 (3d Cir. 1993).

[53]     *Id.*

[54]     *Id.* (quotations omitted).

[55]     *Id* at 72-73.

[56]     *Schwartz v. McGraw-Edison Co.*, 14 Cal. App. 3d 767, 780 (Cal. Ct. App. 1971).

11

corporation is still a going concern, with ample assets to meet its obligations."[57]

However, California courts have recognized certain exceptions to the general rule

of nonliability where

> (1) the purchaser expressly or impliedly agrees to such assumption, (2)
> the transaction amounts to a consolidation or merger of the two
> corporations, (3) the purchasing corporation is merely a continuation of
> the selling corporation, or (4) the transaction is entered into fraudulently
> to escape liability for debts.[58]

The second exception — the *de facto* merger exception — has been

invoked "where one corporation takes all of another's assets without providing any

consideration that could be made available to meet claims of the other's creditors

or where the consideration consists wholly of shares of the purchaser's stock which

are promptly distributed to the seller's shareholders in conjunction with the seller's

liquidation."[59] Courts have set forth five factors to determine whether a transaction

cast in the form of an asset sale actually achieves the same practical result as a

merger:

> (1) was the consideration paid for the assets solely stock of the
> purchaser or its parent; (2) did the purchaser continue the same
> enterprise after the sale; (3) did the shareholders of the seller

---

[57]     *Id.* at 780-81 (quotations and citations omitted).

[58]     *Franklin v. USX Corp.*, 87 Cal. App. 4th 615, 621 (Cal. Ct. App.
2001) (quotations and citations omitted).

[59]     *Ray v. Alad Corp.*, 19 Cal. 3d 22, 28 (Cal. 1977).

become shareholders of the purchaser; (4) did the seller liquidate; (5) did the buyer assume the liabilities necessary to carry on the business of the seller?[60]

When California courts have held that a corporation which acquired the assets of another was the seller's mere continuation — the third exception to the nonliability rule — they "have imposed such liability only upon a showing of one or both of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations."[61] "[S]everal other characteristics of a mere continuation to which *Ray* alludes"[62] include sale of the "principal assets," direct sale — not through a creditor of the seller — of assets to the buyer, and continuity of employees beyond a single officer.[63] While the mere continuation and *de facto* merger grounds for liability "have been traditionally considered as separate bases for imposing liability on a successor corporation," courts have also "perceive[d]

---

[60]     *Marks v. Minnesota Mining and Mfg. Co.*, 187 Cal. App. 3d 1429, 1436 (Cal. Ct. App. 1986).

[61]     *Ray*, 19 Cal. 3d at 29.

[62]     *Maloney v. American Pharmaceutical Co.*, 207 Cal. App. 3d 282, 288 (Cal. Ct. App. 1988).

[63]     *See id.*

13

the [former] to be merely a subset of the [latter]."[64] "The crucial factor in determining whether a corporate acquisition constitutes either a de facto merger or a mere continuation is the same: whether adequate *cash* consideration was paid for the predecessor corporation's assets."[65] Thus, apart from other relevant factors to the *de facto* merger and mere continuation exceptions, "the common denominator [between the two], which must be present in order to avoid the general rule of successor nonliability, is the payment of inadequate consideration."[66]

"In addition, under limited circumstances an exception has been judicially created to provide a remedy against the successor when a person has been injured by the predecessor's product."[67] This exception — set forth in *Ray v. Alad Corporation*[68] — applies where "a party [] acquires a manufacturing business and continues the output of its line of products."[69] Under those circumstances, the acquirer "assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was

---

[64]     *Franklin*, 87 Cal. App. 4th at 625.

[65]     *Id.* (emphasis added).

[66]     *Id.* at 627.

[67]     *Id.* at 621.

[68]     19 Cal. 3d 22 (Cal. 1977).

[69]     *Id.* at 34.

14

acquired."[70] "The *Ray* court declare[d] that the exception to the general rule which it announce[d] applies only 'under the narrow circumstances [t]here presented.'"[71]

## IV.  DISCUSSION

To join or substitute CMA and/or WD with or for WDE, this Court must first find that they are WDE's successors in interest. Whether a party is a successor in interest is governed by state law.  Plaintiffs, WD and CMA agree that — to the extent that state law applies — California law governs.[72] Alternatively, Plaintiffs assert that federal common law should displace state law because California law frustrates the federal policy protecting copyrights.[73]

### A.  WD

#### 1.  WD Did Not Expressly Assume the Liability Arising Out of This Lawsuit

Plaintiffs allege that WD is WDE's successor in interest because WD "assumed the liabilities"[74] of WDE.  However, Plaintiffs confuse this ground for

---

[70]     *Id.*

[71]     *Maloney*, 207 Cal. App. 3d at 289 (quoting *Ray*, 19 Cal. 3d at 25). "[C]ases . . . which interpret *Ray* indicate that the *Ray* exception applies in product liability cases in which strict tort liability is available as a theory of recovery, and make no effort to extend its applicability beyond the arena of strict liability." *Id.*

[72]     *See* Pl. Mem. at 4; WD Opp. Mem. at 9; CMA Opp. Mem. at 12.

[73]     *See* Pl. Reply Mem. at 7.

[74]     Pl. Mem. at 7.

15

holding WD as a successor in interest with one of the factors relevant to the de

facto merger inquiry. The first ground for holding an entity as a successor in

interest of another asks whether that entity assumed the specific liability at issue[75]

— here, the liability arising out of this lawsuit. While WD assumed eighteen

million dollars of WDE's liabilities, this lawsuit — which was included in the

Asset Purchase Agreement between WD and CMA in the Copyright Litigation

category — was specifically excluded.[76] Therefore, WD did not assume the

liability arising out of this lawsuit and is not WDE's successor in interest under the

first exception to nonliability.

### 2.     De Facto Merger/Mere Continuation[77]

Plaintiffs next argue that the Asset Sale achieved the same practical

result as a merger. I consider each of the factors in turn. *First*, WD did not pay for

the assets with stock. WD's consideration in the Asset Sale consisted of cash,

---

[75]     *See Franklin,* 87 Cal. App. 4th at 621.

[76]     *See* Purchase Agreement at Schedule 2.3.

[77]     Plaintiffs make two separate arguments that WD is WDE's successor in interest on the *de facto* merger ground *and* under the mere continuation exception. *Compare* Pl. Mem. at 5-7 (arguing that WD is continuing the business of WDE) *with* Pl. Reply Mem. at 4-5 (asserting that the Asset Sale was in effect a merger). As other courts have commented, the mere continuation exception is very similar to the second factor of the *de facto* merger exception. *See Franklin*, 87 Cal. App. 4th at 624. I agree and will consider Plaintiffs' mere continuation argument within the *de facto* merger analysis.

16

future royalties and assumption of certain liabilities.[78] *Second*, there is evidence that WD continued the same enterprise as WDE after the Asset Sale. WD's name is nearly identical to WDE's. WD's listed address is the same as WDE's former address and WD now employs the former in-house counsel of WDE.[79] Moreover, WD purchased assets that were important to WDE's business, including property necessary to operate the business, intellectual property such as licenses and trademarks and customer and vendor lists.[80] *Third*, WDE's known shareholders did not become the known shareholders of WD. WDE's sole shareholder was Nexis, Inc., and was indirectly owned by Nexis Holdings LLC and in part by Richard Huong.[81] WD's sole shareholder is Northwood Partners Limited.[82] Plaintiffs do not allege that any of these entities have ownership interests in the others. They argue that an evidentiary hearing is necessary to determine who owns the remaining fifty-one percent of Nexis Holdings LLC because neither WD nor CMA provided that information.[83] *Fourth*, it appears that WDE liquidated, as it assigned

---

[78]     *See* Pl. Mem. at 2-3.

[79]     *See* Ravicher Decl. ¶¶ 3-5.

[80]     Purchase Agreement at 4-6.

[81]     *See* WD Opp. Mem. at 3.

[82]     *See* Moore Decl. ¶¶ 7-8.

[83]     *See* Pl. Reply Mem. at 10.

17

its business to CMA so that CMA could sell its assets and distribute the proceed. However, WD stated that WDE is still active and is now carrying on business under the name Mora.[84] Thus, it is unclear whether WDE underwent liquidation. *Fifth*, WD assumed eighteen million dollars of WDE's liabilities.[85] The content of these liabilities was omitted from the Asset Sale Agreement. Presumably these eighteen million dollars worth of liabilities were necessary to carry on WDE's business.

Plaintiffs also argue that the five hundred thousand dollars paid by WD for WDE's assets constitutes inadequate cash consideration — a requirement to satisfying the *de facto* merger inquiry. WD maintains that the consideration it paid for WDE's assets also includes one million five hundred thousand dollars of future royalties for a total of two million dollars in cash consideration.[86] WDE held assets worth one million six hundred thousand dollars at the time of the sale.[87] Five hundred thousand dollars plus one million five hundred thousand dollars of future royalties is inadequate cash consideration for those assets. Payment of future

---

[84]    *See* WD Opp. Mem. at 4.

[85]    *See* Pl. Mem at 2-3.

[86]    *See* WD Opp. Mem. at 15-16.

[87]    *See* Pl. Reply Mem. at 5.

royalties is contingent upon WD's future sales, and there is no guarantee that WDE's estate will receive that portion of the consideration. Thus, WDE's estate received a third of WDE's assets' value in cash along with a promise of further cash payment if WD sells certain assets in the future. The purpose of requiring adequate cash consideration is to ensure that an asset sale generates enough cash to the seller so that it can satisfy those liabilities not assumed by the buyer.[88] As WD assumed eighteen million dollars of WDE's forty-three million dollars in liabilities,[89] WDE's estate still retains sizeable liabilities. An estate with only five hundred thousand dollars in cash will certainly leave many creditors "out of the money."

While the first factor of the *de facto* merger inquiry weighs in favor of finding that WD is not WDE's successor in interest, other factors do suggest that the Asset Sale amounted to a merger of the two companies. Yet because there are gaps in the evidence — such as the nature of the assumed liabilities and the remaining shareholders of Nexis Holdings LLC — and contradictions — including whether WDE liquidated — it would be premature to conclude that WD is WDE's

---

[88] *See Franklin*, 87 Cal. App. 4th at 625 ("[A] sale for adequate cash consideration ensures that at the time of sale there are adequate means to satisfy any claims made against the predecessor corporation.").

[89] *See* Pl. Mem. at 3.

19

successor in interest. Therefore, I am unable to decide the motion on the papers, and must hold an evidentiary hearing to determine whether the Asset Sale achieved the same result as a merger between WDE and WD.[90]

**B.   CMA**

Plaintiffs' allegations that CMA is WDE's successor in interest under California law include: WDE's business "passed through CMA,"[91] "the 'business' of [WDE] flowed through CMA for at least some period of time,"[92] and the liabilities of WDE "rested with CMA for some period of time."[93] None of these allegations meet any of the exceptions under California law for holding CMA as WDE's successor in interest. Plaintiffs do not allege that CMA is a mere continuation of WDE, nor that the Assignment amounted to a merger. While Plaintiffs' allegation that WDE's liabilities rested with CMA for some time may suggest that CMA assumed the liability arising out of this lawsuit, CMA did not assume WDE's liability under this lawsuit in its individual capacity. CMA

---

[90]   *See Luxliner*, 13 F.3d at 72-73 (holding that where the affidavits show an issue of material fact, a motion under Rule 25(c) is properly decided after conducting an evidentiary hearing).

[91]   Pl. Mem. at 5.

[92]   *Id.* at 6.

[93]   *Id.* at 7.

20

assumed WDE's liabilities as a trustee for the benefit of all of WDE's creditors.[94]

CMA was charged under California law to act as a fiduciary for WDE's creditors, and to liquidate WDE's assets to distribute recoveries to its creditors.[95] When it assumed WDE's liabilities, it did not assume personal responsibility for them.[96] As a result, CMA is not individually liable as WDE's successor in interest.

While Plaintiffs cannot meet any of the first three successor in interest exceptions, they request an evidentiary hearing to investigate whether the transaction was fraudulent — the fourth ground for finding an entity to be a successor in interest.[97] However, Plaintiffs concede that they "do not have enough information to allege that this was a fraudulent transfer."[98] Evidentiary hearings are appropriate where "the affidavits show that there is [a] genuine issue as to [a]

---

[94] *See* CMA Opp. Mem. at 2, 9. *Accord* Cal. Code Civ. Proc. § 493.101 ("The assignment is for the benefit of all the defendant's creditors.").

[95] *See Credit Managers Ass'n. of S. Cal. v. Brubaker*, 233 Cal. App. 3d 1587, 1595 (Cal. Ct. App. 1991) (holding that in an "assignment for the benefit of creditors . . . a disinterested third party [] liquidate[s] and distribute[s] the assets of [the assignor] to creditors.").

[96] *See id.* ("The beneficial procedure of an assignment for benefit of creditors would be impossible to use if the assignee had to assume the liabilities of the insolvent business.").

[97] *See Franklin,* 87 Cal. App. 4th at 621.

[98] Pl. Rep. Mem. at 10.

21

material fact."[99] There is no issue of material fact here, however, because Plaintiffs do not offer any proof of fraud. Accordingly, no hearing is required. Moreover, because Plaintiffs did not allege facts sufficient to meet any of the other exceptions to the general rule against successor liability, CMA is not WDE's successor in interest under California law.

### C.    Plaintiffs "Continuing the Tortious Activity" Argument

Plaintiffs ask this Court to hold WD and CMA as successors in interest to WDE on the theory that they are continuing WDE's tortious activity of copyright infringement. However, to do so would expand the *Ray* exception beyond its context. The court in *Ray* held that a purchaser of assets may be liable for the seller's torts in the defective product liability arena when that purchaser continues to manufacture or sell the defective product.[100] The *Ray* court created that exception for the narrow circumstances which were before it.[101] Just as California courts have declined to expand the rule beyond strict liability for defective products, this Court declines to hold that WD or CMA are liable for

---

[99]    *Luxliner*, 13 F.3d at 72-73.

[100]    *See Ray*, 19 Cal. 3d at 34.

[101]    *See id.*

WDE's copyright infringement.[102]

### D. Plaintiffs' Transfer of Property Argument

Plaintiffs' argument that WD and CMA may be substituted for WDE because WDE transferred the property at issue is also misguided. Plaintiffs assert that because WDE assigned the Infringing Assets to CMA, which in turn sold them to WD, CMA and WD are now the real parties in interest to this case. However, the issue in this case is not the Infringing Assets themselves, but WDE's *use* of the Infringing Assets to infringe Plaintiffs' copyright. To the extent Plaintiffs are arguing that CMA or WD is guilty of copyright infringement through its own use of the Infringing Assets, Plaintiffs may amend the Complaint to plead facts specific to CMA or WD's alleged infringing activity. However, merely because CMA assumed and WD purchased the Infringing Assets does not make them WDE's successors in interest.

### E. Plaintiffs' Preemption Argument

Plaintiffs argue that California state law is preempted and federal law should displace it. Plaintiffs assert that the operation of California law — specifically the laws authorizing assignment for the benefit of creditors — conflicts with the unique federal interest in copyright protection. Plaintiffs argue that

---

[102]     *See Maloney*, 207 Cal. App. 3d at 289 (deciding not to expand the *Ray* exception beyond the strict product liability context).

because an assignment for the benefit of creditors would allow a copyright infringer to assign its assets, disclaim liabilities, and subsequently liquidate, California law allows a copyright infringer to escape liability and therefore frustrates the federal interest of protecting copyrights. Plaintiffs maintain that in place of state law, this Court should apply the federal "substantial continuity test"[103] — a test adopted by the Supreme Court when deciding a successor liability issue in the field of labor law.[104] The substantial continuity test asks "whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations."[105]

Plaintiffs' preemption contention is flawed. Assuming, *arguendo*, that Plaintiffs can even meet the substantial continuity test, federal copyright law does not preempt California state creditor law. An assignment for the benefit of creditors does not operate to frustrate copyright enforcement, as Plaintiffs argue.

---

[103]   Pl. Reply Mem. at 9.

[104]   *See Fall River Dyeing & Fishing Corp. v. NLRB*, 482 U.S. 27, 43 (1987). Notably, the Supreme Court applied this test because the National Labor Relations Board uses it to determine whether a successor company should be held to answer for unfair labor practices of its predecessor. The Court therefore adopted the test in order to review the decisions of the NLRB.

[105]   *Id.* (quotations omitted).

24

The only way to nullify the assignment is to prove that the transfer was fraudulent. Additionally, Plaintiffs may add the alleged continuing infringers to this action as direct defendants. Merely because Plaintiffs choose not to utilize these alternative courses of action, but instead move to join CMA and WD as WDE's successors in interest, does not mean Plaintiffs' copyright lacks protection. Thus, the California law authorizing assignments for the benefit of creditors does not "permit[] infringement to continue unabated"[106] and does not frustrate the enforcement of federal copyright law.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs' motion to join respondents is denied as to CMA. Plaintiffs' motion to join WD is denied, without prejudice, subject to Plaintiffs' decision to refile following an evidentiary hearing on the issues of whether the asset sale amounted to a merger between WDE and WD and whether WD substantially continued WDE's business. A hearing is scheduled for February 2, 2011 at 4:30 P.M. The Clerk of the Court is directed to close this motion (Docket No. 133).

---

[106]     Pl. Reply Mem. at 9.

25

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           November 29, 2010